UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br>*ex rel.* James E. Lytle<br>1520 N. Collington Ave<br>Baltimore, Maryland 21213,<br><br>      Plaintiff/Relator<br><br>**v.**<br><br>Ho-Chunk, Inc.<br>1 Mission Drive<br>Winnebago, NE 68071<br><br>All Native Group, Inc.<br>1 Mission Drive<br>Winnebago, NE 68071<br><br>All Native Solutions<br>1 Mission Drive<br>Winnebago, NE 68071<br><br>Ho-Chunk Shared Services<br>1 Mission Drive<br>Winnebago, NE 68071<br><br>Thunder Ridges Solutions Services<br>1 Mission Drive<br>Winnebago, NE 68071<br><br>      Defendants | FILED UNDER SEAL PURSUANT<br>TO 31 U.S.C. § 3730<br><br>Civil Case No. Case: 1:22-cv-01032 JURY DEMAND<br>Assigned To : Kollar-Kotelly, Colleen<br>Assign. Date : 04/05/2022<br>Description: Gen. Civil (E-DECK)<br><br>JURY TRIAL DEMANDED |

**<u>FALSE CLAIMS ACT COMPLAINT</u>**

**NOW COMES** James Lytle, Plaintiff, and Relator, on behalf of the United

States of America (the "Government") and himself, brings this action under the

Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, against Ho-Chunk, Inc., All Native Group, Inc., Ho-Chunk Shared Services Company, and Thunder Ridge Solutions Company to recover all damages, penalties, and other remedies provided by the False Claims Act on behalf of the United States and himself, and for this Complaint alleges:

I.    **PARTIES**

1. James Lytle is a resident of Baltimore, Maryland, and was employed as an employee for All Native Group from June 9, 2021, until January 12, 2022.

2. Ho-Chunk, Inc. is incorporated as a Federal Corporation and under the laws of the Winnebago Tribe, Nebraska.[1]  The Ho-Chunk, Inc. headquarters is located in Winnebago, Nebraska.

3. All Native Group, Inc., (ANG) a subsidiary of Ho-Chunk, Inc, is a tribally owned entity with headquarters in Winnebago, Nebraska.  All Native Group is registered to do business in Virginia and Maryland.

4. Ho-Chunk Services Solutions Company (SSC) a subsidiary of Ho-Chunk, Inc, is a tribally owned entity with headquarters in Winnebago, Nebraska.

5. All Native Solutions (ANS) is a subsidiary of Ho-Chunk, Inc, is a tribally owned entity with headquarters in Winnebago, Nebraska.

---

[1] The Ho-Chunk Tribe is a federally recognized Native American tribe and therefore has sovereign immunity from liability under Federal Claims Act.  *See Dahlstrom v. Sauk-Suiattle Indian Tribe of Wash.,* No. C16-0052JLR (W.D. Wash. Jan. 31, 2017). This immunity does not extend to business entities that are not functioning as an "arm of the tribe." *White v. Univ. of Cal.,* 765 F.3d 1010, 1025 (9th Cir. 2014) (citing *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort,* 629 F.3d 1173, 1187 (10th Cir. 2010)).

6.  Thunder Ridge Solutions (TR), a subsidiary of All Native Group, Inc., is a tribally owned entity with headquarters in Winnebago, Nebraska. Thunder Ridge Solutions does not appear to be registered to do business in Virginia or Maryland.

## I.  JURISDICTION

7.  Jurisdiction in this Court is proper pursuant to 31 U.S.C. § 3732(a) and 3730(b).  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345.

8.  Pursuant to 31 U.S.C. § 3730(b)(2), the Relator has prepared and served (along with the original Complaint) on the Attorney General of the United States a statement of all material evidence and information currently in his possession and of which he is the original source. This Disclosure Statement is supported by material evidence known to the Relator at the time of filing establishing the existence of Defendants' false and fraudulent claims. Because the Disclosure Statement includes attorney-client communications and work product of Relator's attorneys and was submitted to Federal officials in their capacity as counsel for the United States, the real-party-in-interest in the action's qui tam allegations, the Relator asserts that the Disclosure Statement is confidential and exempt from disclosure under the Freedom of Information Act *(see* 5 U.S.C. § 552; 31 U.S.C. §3729(c)) and common-law doctrines of common interest privilege and work-product.

## II.  INTRODUCTION AND STATEMENT OF FACTS

9. Mr. Lytle holds professional licenses and certifications as a Certified Public Accountant (2006), a Certified Information Systems Auditor (2010), and a Chartered Global Management Accountant (2012). Mr. Lytle has held positions, as a consultant and an employee, to government contractors as a Subject Matter Expert. In each role since 2012, Mr. Lytle has focused on government contracting compliance with the laws that govern the relationship between a government entity and a contractor.

10. On or about March 23, 2020, Ho-Chunk Shared Services Company, Thunder Ridge Solutions Company contracted with the Marine Corps Systems Command (Contract No. M6785420C0502) to provide quality financial support to the Program Offices and Assistant Program Financial Managers. The contract was funded for $2,089,286.40.

11. On or about April 20, 2020, the scope of the project was expanded to include Audit Support Logistics Management Tasks. The contract listed four Contract Line Item Numbers (CLIN). CLIN 0010 had delivery dates of April 20, 2020, to March 2021. CLIN 1010 had delivery dates of March 23, 2021, to March 22, 2022. CLIN 2010 had delivery dates of March 23, 2022, to March 22, 2023. CLIN 3010 had delivery dates of March 23, 2023, to March 22, 2024. This change resulted in an increase of $1,800,729.60 for a total budget of $3,890,016.00.

12. On or about June 8, 2021, Mr. Lytle was hired by All Nation Group (ANG) as a Certified Systems Information Auditor (CISA). The position provided

support to the Marine Corps System Command to remediate audits. Competencies for the position included, among other skills, critical thinking, management of quality of work, and up to date knowledge of information technology and security trends. The work hours were Monday through Friday from 8:00 am to 5:00 pm with evening and weekend hours as the project required. Mr. Lytle began work on June 9, 2021, was assigned a Thunder Ridge email (jlytle@thunderridge.com), a Marine Corps Contractor email (james.lytle.ctr.@usmc.mil), and was assigned tasks associated with CLIN 1010. Mr. Lytle was told to enter his time worked in the company's timekeeping software under CLIN 1010. At the time, Mr. Lytle was not aware of the delivery dates associated with any of the contract line item numbers.

13. Mr. Lytle became concerned that ANG was not billing as required by Federal Acquisition Regulations (FAR). Mr. Lytle was told to enter his time in the company's timekeeping software but was told to enter 8 hours for each day regardless of the amount of time worked. The position was not the type that would be an exempted position – meaning Mr. Lytle should have been eligible for overtime. Although Mr. Lytle was concerned about the amount of time he was working that was not compensated, the issue that was the most disturbing for Mr. Lytle was inaccurately entering time worked as it is in violation of FAR. Mr. Lytle alerted Mr. Perry and Mr. Gaines, as well as Ms. Nelson and Ms. Rivera Encinas who were not part of ANG, TR, or Ho-Chunk, Inc. Mr. Perry told Mr. Lytle to not contact Ms. Nelson or Ms. Rivera Encinas. This directive trouble Mr. Lytle. It was

a red flag that the Company was not following the rules that protect the government from fraud.

14. Once Mr. Lytle became vocal that the billing was a violation of FAR, the Company engaged in efforts to frustrate his ability to do his job.  Mr. Lytle was locked out of his email; he was assigned to work with people who were not qualified; he was expected to pick up the slack for the unqualified employees, requiring him to work even more hours; and assigned tasks but not notified of the assignment.

15. Mr. Lytle's ability to do his job was frustrated when:  Mr. Lytle was locked out of his email; he was assigned to work with people who were not qualified for the job they were doing, thus creating more work for him; and assigned to tasks but not notified of those assignments. As Mr. Lytle continued to be vocal about the company's violations the efforts to frustrate his ability to complete his work increased.

16. Unbeknownst to Mr. Lytle on or about September 1, 2021, ANG received a request to switch Mr. Lytle to CLIN 2010.

17. On or about November 29, 2021, Mr. Lytle received an email that suggested he was assigned to a different set of tasks that appeared to be associated with a different contract.  The tasks were associated with and were to be billed against CLIN 2010.  Mr. Lytle, unaware of the terms of the All Native Groups contract with the Marine Corps, thought that he was assigned to a new contract. Although the tasks were associated with CLIN 2010 Mr. Lytle was never given

access to CLIN 2010 for billing. When Mr. Lytle put his time into the timekeeping system, CLIN 1010 was automatically populated and could not be changed.

18. Mr. Lytle became extremely uncomfortable with the inner workings of All Native Group. Supervisors within the company did not seem concerned that the practices were serious violations that would put the company at risk if not corrected. Mr. Lytle recognized these practices as fraud against the government and attempted to have someone listen to him.

19. On or about November 30, 2021, Mr. Lytle contacted Charles T. Gaines, IV who purported to be the Program Manager for All Native Group Marine Corps Systems Command to express his concern that he was now asked to bill to a different contract. Mr. Gaines responded that CLIN 1010 and CLIN 2010 were the same contract and by using CLIN 2010 to bill for time it allowed the company and the customer to better utilize Mr. Lytle's skillset. Mr. Lytle was still not given access to CLIN 2010 for timekeeping.

20. During this November 30, 2021, email exchange, Mr. Lytle requested a phone meeting with Brett Hysinger, Senior Division Director of All Native Group. Mr. Gaines discouraged Mr. Lytle from speaking with Mr. Hysinger, stating that it may not be the best course of action. Mr. Lytle spoke with Mr. Hysinger and advised him of the concerns with the quality of work being submitted from others and the violations with billing and timekeeping that constituted fraud.

21. On or about December 1, 2021, Mr. Lytle was assigned an email through All Native Group (jlytle@allnativegroup.com). Mr. Lytle no longer had access to his Thunder Ridge Solutions email account.

22. On or about December 2, 2021, Mr. Lytle forwarded Mr. Gaines' email to Ms. Nelson and Ms. Rivera Encinas at Ms. Nelson's request. Mr. Lytle expressed his concerns that the All Native Group staff associated with the project were placing the Company in jeopardy and hoped that Ms. Nelson and Ms. Rivera Encinas would have better luck in advising Ho-Chunk of the problems.

23. At the end of December, Mr. Lytle had a telephone conversation with Mr. Perry and Mr. Solamon. The gentlemen blamed Mr. Lytle for all mistakes and for missing an assignment. They also defended the subpar work of members of the team. Mr. Lytle expressed concerns that the subpar work and the fraudulent billing was placing the ANG's government contract in jeopardy.

24. On or about January 10, 2022, Mr. Lytle submitted a complaint to the Inspector General for the Marine Corps giving the details of the violations of the company. A receipt for that complaint (No. 34514) was received on January 10, 2022, at 7:30 AM.

25. Mr. Lytle was not notified of any disciplinary actions against him until January 11, 2022, when Mr. Lytle was asked to sign a document that attributed

blame to him.  Mr. Lytle refused to sign the letter as it contained false allegations and untrue statements.

26.     Mr. Lytle emailed the Marine Corps investigator assigned to the complaint with additional information on January 12, 2022, including that he had reported fraud and incompetence to supervisors and managers who turned a blind eye.  Mr. Lytle informed the investigator that he felt harassed for bringing the fraud and incompetence to light.

27.     At 5:20 PM on January 12, 2022, Mr. Lytle received an email that he was terminated immediately. The separation letter (undated) did not provide any information for returning any equipment Mr. Lytle had been provided by ANG.

28.     The January 12, 2022, email suggested that Mr. Lytle should return his work computer to Quantico.  This confirmed that ANG did not have any idea of the need to follow FAR.  Mr. Lytle had not received a work computer weeks after starting in June 2021 and was required to use his personal computer for work.  At no time was his personal computer serviced to ensure removal of any sensitive information.

29.     From November 2021 through his involuntary termination, Mr. Lytle was given access only to CLIN 1010 for billing purposes.  Mr. Lytle had notified his superiors, their superiors, personnel from the Marine Corps assigned to the project

and anyone else that he felt it appropriate to notify that he was not billing to the correct line item and that constituted fraud.

30. On or about January 20, 2022, Mr. Lytle received an email from Ho-Chunk HR requesting that Mr. Lytle return the government issued property to the Marine Corps Base in Quantico, VA. Mr. Lytle was not comfortable with this method of returning the property as it violated FAR.

31. Mr. Lytle, through counsel, requested a copy of the procedures for the return of property and for arrangements to be made at the company's expense for the property to be returned. Rochelle Leyva, Human Resources Business Partner, All Native Group responded to the request by stating that she was sorry that returning the equipment was such a task for Mr. Lytle and stated she was making it easy for Mr. Lytle by sending a FedEx box for the property to be shipped to Mr. Gaines. Ms. Leyva did not share the policies and procedures with Mr. Lytle and did not address the violation of FAR. Nor did Ms. Leyva express an understanding of the need to follow any protocol for returning equipment that would be in compliance with FAR.

32. The structure of Ho-Chunk, Inc., its subsidiaries and the subsidiaries of its subsidiaries is difficult to trace. Therefore, until such time as information is provided of the structure of the subsidiaries, the Complaint may be amended to add or delete companies purporting to have an interest in and responsibility for the contract identified in this Complaint.

I.  **LEGAL FRAMEWORK FOR CLAIMS**

33. To establish a prima facie case under the FCA, the relator must prove: "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *Hutchins v. Wilentz, Goldman Spitzer*, 253 F.3d 176, 182 (3d Cir.2001).

34. The False Claims Act defines "knowing" as including a defendant's "actual knowledge," "deliberate ignorance," or "reckless disregard" of the truth or falsity of information in the defendant's claim to the government. 31 U.S.C. § 3729(b). Further, "no proof of specific intent to defraud is required." *Id.* Congress specifically expressed "`its intention that the act not punish honest mistakes or incorrect claims submitted through mere negligence.'" *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir.1998) (quoting S.Rep. No. 99-345, at 7 (1986), U.S. Code Cong. Admin. News 1986, pp. 5266, 5272).

35. The FCA also contains a "whistleblower" protection provision to protect *qui tam* relators who suffer retaliation on account of their conduct "in furtherance of an action under [the FCA]." *See* 31 U.S.C. § 3730(h). The statute provides that: "[a]ny employee who is discharged . . . because of lawful acts done by the employee . . . in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole." *Id.* Unlike the *qui tam* action, claims for retaliation under the FCA are not constrained by the fraud pleading standard, and need only satisfy the general pleading requirements of Federal Rules

of Civil Procedure 8. *Martin v. Arc of the District of Columbia*, 541 F. Supp. 2d 77, 83 (D.D.C. 2008) (Cleaned up).

36. To state a claim for retaliation, the employee's complaint must also plausibly allege (i) a qualifying retaliatory employment action, (ii) the employer's knowledge that the employee was engaged in protected activity, and (iii) facts showing that the employment action was caused by the employee's engagement in that activity. *See* 31 U.S.C. § 3730(h)(1).

37. To show that plaintiff was engaged in protected activity, i.e., acts "in furtherance of" an FCA action, the employee does not need to have initiated a *qui tam* suit at the time of such acts, or even have contemplated initiating such a suit. *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 739-41 (D.C. Cir. 1998); *see also Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005). However, the relator must "be investigating matters that reasonably could lead to a viable FCA case." *Hoyte v. United States*, 2008 WL 564649, *4 (D.C. Cir. Mar. 4, 2008) (quoting *Yesudian*, 153 F.3d at 740 (internal citations omitted)).

38. When the conduct is protected, "[d]ischarge plainly qualifies as a retaliatory employment action under Section 3730(h). *Singletary v. Howard Univ.*, 939 F.3d 287, 299 (D.C. Cir. 2019) (Cleaned up).

39. Section 3730(h) of the FCA was enacted to provide legal protection from retaliatory acts for those who may be considering exposing fraud. *Boone v. Foundation*, 64 F. Supp. 3d 216, 225 (D.D.C. 2014)

40. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, asamended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), the Bipartisan Budget Act of 2015, Pub. L. 114-74, § 701 (Nov. 2, 2015), and 28 C.F.R. § 85.1, *etseq.,* the False Claims Act civil penalties were adjusted to $11,181 to $22,363 for violations assessed after January 29, 2018. 28 C.F.R. § 85.5 (2018).

## Causes of Action

### COUNT I - SUBMISSION OF FALSE CLAIMS
### FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729(a)(l)(A), *et seq.*

41. Relator repeats each and every allegation of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

42. As a result of the foregoing conduct, all Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(l)(A).

43. These materially false claims charged the United States for the incorrect CLIN.

44. Defendants acted with actual knowledge, deliberate ignorance, or reckless disregard of the false or fraudulent nature of their claims.

45. Because of the Defendants' actions, the United States has been damaged in a substantial amount to be determined at trial.

### COUNT II - USE OF FALSE RECORDS
### FEDERAL FALSE CLAIMS ACT,
### 31 U.S.C. §§ 3729(a)(l)(B), *et seq.*

46. Relator repeats each and every allegation of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

47. As a result of the foregoing conduct, all Defendants knowingly made and used false records and statements, including, but not limited to, false cost and pricing information submitted in response to Government contract solicitations and/or kept on the Defendants' books and records, to get false or fraudulent claims paid or approved, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(l)(B).

48. These false records were material to false claims because they had a natural tendency to influence and were capable of influencing the Government to enter into contracts and to make payments which, absent their falsity, the Government would not have done.

49. Defendants acted with actual knowledge, deliberate ignorance, or reckless disregard of the false or fraudulent nature of their claims.

50. Because of the Defendants' actions, the United States has been damaged in a substantial amount to be determined at trial.

**COUNT III-RETALIATION IN VIOLATION OF 31 U.S.C. § 3730(h)**

51. Relator undertook lawful acts in furtherance of an action under the False Claims Act, 31 U.S.C. § 3729, *et seq*. Relator also undertook efforts to stop the Defendants from violating the False Claims Act, 31 U.S.C. § 3729, *et seq*.

52. Defendants were aware of Relator's efforts as described in the preceding paragraphs.

53. Defendants retaliated against Relator within the meaning of the False

Claims Act, 31 U.S.C. § 3730(h)(l).

54. Because of Defendants' actions, Relator has been damaged in a substantial amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, in Mr. Lytle's capacity as Relator, he prays that the Court enter judgment against the Defendants as follows:

(a) that the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal False Claims Act, 31 U.S.C. § 3729, *et. seq.* provides;

(b) that civil penalties be imposed for each and every false claim Defendants caused to be presented to the United States and/or its grantees, and for each false record or statement that Defendants made, used, or caused to be made or used that was material to a false or fraudulent claim;

(c) that attorneys' fees, costs, and expenses that the Relator necessarily incurred in bringing and pressing this case be awarded;

(d) that the Relator be awarded the maximum amount allowed to him pursuant to the Federal False Claims Act; and

(e) that this Court award such other and further relief as is deemed proper.

FURTHERMORE: WHEREFORE, in Mr. Lytle's capacity as Plaintiff, he prays this

Court enter judgment against Defendants as follows:

    (a)    that he be awarded all remedies that the Federal False Claims Act provides, including "reinstatement with the same seniority status as employee, contractor, or agent would have had but for the retaliation to include two times back pay, interest on the back pay, and compensation for any special damages as a result of the retaliation; and

    (b)    that attorneys' fees, costs, and expenses that the Plaintiff necessarily incurred by bringing and pressing this case be awarded; and

    (c)    that this Court award such other and further relief as it deems proper.

## JURY TRIAL DEMANDED

Relator, on behalf of the United States, hereby demands a jury trial on all claims so triable.

Dated: April 5, 2022.                              Respectfully submitted,

                                                                      */s/Theresa Kraft*
                                                                      **Theresa Kraft, Esq.**
                                                                      D.C. Bar No. 1741565
                                                                      **Wilt & Kraft, PLLC**
                                                                      1629 K Street NW, Suite 300
                                                                      Washington, DC 20006
                                                                      202-508-3648 (office)
                                                                      603-568-2464 (cell)